UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
SHARON J. LANGTON                    :
            Plaintiff,               :
                                     :
      v.                             :        CA 05-131 S
                                     :
JO ANNE B. BARNHART,                 :
Commissioner,                        :
Social Security Administration,      :
            Defendant.               :
```

## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

This is an action for judicial review of the decision of the
Commissioner of Social Security ("the Commissioner"), denying
Disability Insurance Benefits ("DIB"), under § 205(g) of the
Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act").
Plaintiff Sharon J. Langton ("Plaintiff") has filed a motion to
reverse the decision of the Commissioner. Defendant Jo Anne B.
Barnhart ("Defendant") has filed a motion for an order affirming
the decision of the Commissioner. The motions have been referred
to me for preliminary review, findings, and recommended
disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the
reasons set forth herein, I find that the Commissioner's decision
that Plaintiff did not continue to be disabled after June 12,
2003, is not supported by substantial evidence in the record.
Accordingly, based on the following analysis, I recommend that
Plaintiff's Motion to Reverse the Decision of the Commissioner
(Document ("Doc.") #18) ("Motion to Reverse") be granted to the
extent that it seeks to have the matter remanded for further
administrative proceedings and that Defendant's Motion for Order
Affirming the Decision of the Commissioner(Doc. #19) ("Motion to
Affirm") be denied.

**Facts and Travel**

Plaintiff was born on April 12, 1956, and was forty-seven years of age at the time of the hearing before the Administrative Law Judge ("ALJ"). (Record ("R.") at 37) A high school graduate, (id.), she had worked as a secretary more than twenty years ago (R. at 52). However, her only vocationally relevant employment was as a nurse's aide. (R. at 51-52, 96).

When Plaintiff was seventeen years old, she underwent scoliosis surgery with fusion. (R. at 136) In 1994, Plaintiff began working as a nurse's aide at the Grand Islander Nursing Home. (Id.) For two or three years, prior to the alleged onset date of August 1, 2001, she experienced chronic and recurrent localized back pain. (Id.) Plaintiff managed this pain by taking Motrin. (Id.)

On August 1, 2001, Plaintiff was assisting in the transfer of a 200 pound resident from a wheelchair to a toilet. (R. at 136, 328) The resident let go of a handrail and started to fall, causing Plaintiff to twist and push the patient to prevent her from falling. (Id.) Plaintiff felt an immediate pain in her lower back which made it difficult for her to walk. (R. at 136) She sought treatment the next day from Dr. David A. Johnson ("Dr. Johnson"), her primary care physician. (R. at 134-36) He examined her and ordered x-rays. The x-rays of Plaintiff's spine showed Grade II spondylolisthesis[1] at L1-S1, severe degenerative changes of her lower lumbar spine, and post laminectomy changes of the lumbar spine. (R. at 136)

In December of 2001, Plaintiff sought treatment from James Stanley, M.D. ("Dr. Stanley"), for persistent pain since the August injury. (R. at 161) She told Dr. Stanley that she had

---

[1] Spondylolisthesis is the "[f]orward movement of the body of one of the lower lumbar vertebrae on vertebra below it, or upon the sacrum." Stedman's Medical Dictionary 1656 (26th ed. 1995).

2

"basically been unable to work since that time." (Id.) Dr. Stanley's impression of her problem was "[l]umbar spine and left leg pain status post injury at work with grade II isthmic spondylolisthesis at L5-S1 and postsurgical changes consistent with scoliosis fusion." (R. at 162) Over the next three months, Dr. Stanley discussed surgical options with Plaintiff, (R. at 162, 164-65), and in March she indicated that she was interested in having surgery, (R. at 166). Thereafter, the surgery was discussed further, (R. at 176-77), and it was performed on July 11, 2002, by Dr. Stanley and Mark A. Palumbo, M.D. ("Dr. Palumbo"), (R. at 313). It consisted of "posterior decompression and fusion with instrumentation down into the sacrum." (R. at 187) Following the surgery, Plaintiff wore a body brace until March of 2003. (R. at 36-37)

On November 6, 2002, Dr. Palumbo recorded that "[Plaintiff] is doing quite well. She has been compliant with brace wear. She really has no significant back or leg pain on a regular basis. She is fully ambulatory around her home." (R. at 196)

Dr. David J. Cicerchia performed an independent medical evaluation of Plaintiff on June 12, 2003, apparently in connection with Plaintiff's claim for Worker's Compensation. (R. at 328) Plaintiff told Dr. Cicerchia that following the surgery in July 2002 she had experienced some improvement in her condition but had not returned to work. (Id.) She also reported that she continued to see Dr. Palumbo every two to three months. (Id.) Dr. Cicerchia concluded that Plaintiff had reached maximum medical improvement, that she had a fifteen percent permanent partial disability, and that she was totally disabled from performing her prior job as a certified nurse's aide. (R. at 330) He opined that she could do "a light duty, sedentary job at this time ...," (id.), although he also stated that "[o]rthopedically, the patient's prognosis is poor," (R. at 330).

3

Plaintiff filed an application for DIB on June 25, 2002, alleging disability since August 1, 2001, due to a spinal injury. (R. at 16, 85, 95)   In her disability report, she identified the conditions that limited her ability to work as spondylolisthesis, disc bulge, retrolisthesis,[2] stenosis,[3] and levoscoliosis.[4]   (R. at 95)   The application was denied initially and on reconsideration, (R. at 58, 66), and on March 3, 2004, an ALJ conducted a hearing at which Plaintiff and a vocational expert appeared and testified, (R. at 32-55).   On September 1, 2004, the ALJ issued a decision in which he found that Plaintiff was disabled for the period August 1, 2001, to June 12, 2003, but not thereafter.   (R. at 16-25)   Plaintiff sought review of the ALJ's decision by the Appeals Council.   (R. at 11)   On January 28, 2005, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's September 1, 2004, decision the final decision of the Commissioner.   (R. at 5)

A Complaint (Doc. #1) was filed in this Court on March 28, 2005.   Defendant on October 5, 2005, filed her Answer (Doc. #15). An Order (Doc. #16) referring the case to this Magistrate Judge for a report and recommendation was entered on October 13, 2005. On December 9, 2005, Plaintiff's Motion to Reverse (Doc. #18) was filed, followed on January 9, 2006, by Defendant's Motion to Affirm (Doc. #19).

---

[2] Retrolisthesis is defined as "retrospondylolisthesis." Dorland's Illustrated Medical Dictionary 1456 (28th ed. 1994).

[3] With relation to the spine, stenosis is a "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space ...." Id. at 1576.

[4] Levoscoliosis is an abnormal lateral curvature of the vertebral column to the left.   See Stedman's Medical Dictionary 962, 1584 (26th ed. 1995).

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff was not disabled after June 12, 2003, within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[5] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

---

[5] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

## Law

To qualify for DIB, a claimant must meet certain insured
status requirements,[6] be younger than sixty-five years of age,
file an application for benefits, and be under a disability as
defined by the Act.  See 42 U.S.C. § 423(a).  The Act defines
disability as the "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months ...."  42 U.S.C. §
423(d)(1)(A).  A claimant's impairment must be of such severity
that she is unable to perform her previous work or any other kind
of substantial gainful employment which exists in the national
economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or
combination of impairments is not severe if it does not
significantly limit [a claimant's] physical or mental ability to
do basic work activities."[7]  20 C.F.R. § 404.1521(a) (2006).  A
claimant's complaints alone cannot provide a basis for
entitlement when they are not supported by medical evidence.  See

---

[6] Plaintiff met the insured status requirements as of August 1,
2001, the alleged onset of her disability, and was insured through
December 31, 2006.  (R. at 75)

[7] Section 404.1521 describes "basic work activities" as "the
abilities and aptitudes necessary to do most jobs."  20 C.F.R. §
404.1521(b) (2006).  Examples of these include:

> (1) Physical functions such as walking, standing, sitting,
> lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple
> instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and
> usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

6

<u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19, 20-21 (1st Cir. 1986).

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520(a) (2006); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2290-91 (1987); <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one of the Commissioner's listed impairments; (4) whether she is able to perform her past relevant work; and (5) whether she remains capable of performing any work within the economy. <u>See</u> 20 C.F.R. § 404.1520(b)-(g).  The evaluation may be terminated at any step. <u>See</u> <u>Seavey</u>, 276 F.3d at 4.  "The applicant has the burden of production and proof at the first four steps of the process.  If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." <u>Freeman v. Barnhart</u>, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability on August 1, 2001, (R. at 17, 23); that Plaintiff had medically determinable severe impairments, specifically "degenerative disc disease of the lumbar spine status post fusion due to scoliosis and July 2002 fusion," (R. at 18, 23); that these severe impairments did not meet or equal any listed impairment (<u>id.</u>); that Plaintiff's statements concerning

7

her impairments and their impact on her ability to work were
generally credible for a closed period beginning on August 1,
2001, and ending on June 12, 2003, (id.); that for this period
Plaintiff had demonstrated that she lacked the residual
functional capacity ("RFC") to perform the requirements of any
past relevant work (R. at 19); that the Vocational Expert ("VE")
testified that, assuming Plaintiff's specific work restrictions
and vocational profile, there were no jobs to which she could
make a successful vocational adjustment (R. at 20, 23); that
beginning on June 12, 2003, Plaintiff experienced medical
improvement in relation to her ability to work (id.); that as of
that date Plaintiff had the RFC to perform a reduced range of
light work (R. at 22, 24); that, based upon the testimony of the
VE, Plaintiff could perform the jobs of packager, assembler,
inspector, and production worker, which jobs existed in
significant numbers in the regional economy, and that, therefore,
Plaintiff was not disabled due to medical improvement as of June
12, 2003, but was disabled for a closed period from August 1,
2001, to June 12, 2003, (R. at 22, 24).

### Errors Claimed

Plaintiff alleges: 1) that the ALJ failed to use the medical
improvement standard when he terminated Plaintiff's benefits, see
Memorandum of Law in Support of Plaintiff's Motion to Reverse the
Decision of the Commissioner ("Plaintiff's Mem.") at 5-6; and 2)
that the ALJ's finding that Plaintiff is able to engage in
substantial gainful activity is not supported by substantial
evidence, see id. at 6-9.

### Discussion

### I.   The ALJ's use of the medical improvement standard

Plaintiff claims that the ALJ failed to follow the
requirements of the medical improvement standard in terminating
her benefits.  See id. at 5.  She further contends that if the

ALJ had used the proper standard he should have concluded that her disability continues as substantial evidence supports that conclusion.  See id. at 5-6.[8]

The medical improvement standard has been succinctly stated by the United States Court of Appeals for the First Circuit.

> Under the regulations, medical improvement is defined as "any decrease in the medical severity" of an impairment, and any such decrease "must be based on changes in the symptoms, signs and/or laboratory findings" associated with the claimant's impairment. See 20 C.F.R. § 404.1594(b)(1). To find medical improvement, the Commissioner must compare the prior and current medical evidence to determine whether there have been any such changes in the signs, symptoms and laboratory findings associated with the claimant's impairment. Id. (b)(7), (c)(1).

Rice v. Chater, 86 F.3d 1, 2 (1st Cir. 1996).  The ALJ found that "as of June 12, 2003, the claimant experienced medical improvement in relation to her ability to work."  (R. at 23) Plaintiff contends that a comparison of the medical evidence before, as of, and after June 2003 reveals that her condition has not improved.  See Plaintiff's Mem. at 6.  While Plaintiff acknowledges that she had some improvement after the July 2002 surgery, she maintains that any improvement she experienced was only temporary, see id., and such temporary improvement is insufficient to satisfy the medical improvement standard, see id. (citing 20 C.F.R. § 404.1594(c)(3)(iv)),[9] see also Dedis v.

---

[8] The Court's consideration of this argument is hindered by Plaintiff's failure to use pinpoint citation in several instances when citing cases.  See Plaintiff's Mem. at 5-6.

[9] 20 C.F.R. § 1594(c)(3)(iv) states that:

(iv) Impairment subject to temporary remission. In some cases the evidence shows that an individual's impairments are subject to temporary remission. In assessing whether medical improvement has occurred in persons with this type of impairment, we will be careful to consider the longitudinal

Chater, 956 F.Supp. 45, 52 n.3[10] (D.Mass. 1997)(quoting
regulation).   Plaintiff argues that because her condition was the
same during the period of disability as after, there was no
improvement to justify terminating benefits.   See Plaintiff's
Mem. at 6 (citing Rice v Chater, 86 F.3d 1, 3 (1st Cir. 1996)
("the regulations require actual physical improvement in a
claimant's impairment")).[11]

As support for her contention that the improvement she
experienced after the surgery was only temporary, Plaintiff
appears to rely at least partially on medical records from Dr.
Johnson and Dr. Palumbo which were not before the ALJ.   See
Plaintiff's Mem. at 4 (citing such records); see also (R. at 338)
(Letter from Plaintiff's counsel to Office of Hearings and
Appeals of 11/1/04)("Unfortunately, the hearing judge did not
have all of the medical reports from Dr. Johnson for his review
which would have shed light on [Plaintiff's] condition since June
2003."); (R. at 358)(Letter from Plaintiff's counsel to Office of
Hearings and Appeals of 12/16/04 enclosing December 15, 2004,
report from Dr. Palumbo (R. at 359-60)).   However, in determining
whether the decision of the ALJ is supported by substantial
evidence, this Court considers only the evidence which was before
the ALJ.   See Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001)
(agreeing that the ALJ's decision may be reviewed solely on the
evidence presented to the ALJ); cf. id. (stating that the refusal
of the Appeals Council "to review the ALJ may be reviewable where

---

history of the impairments, including the occurrence of prior
remission, and prospects for future worsenings.   Improvement
in such impairments that is only temporary will not warrant a
finding of medical improvement.

20 C.F.R. § 1594(c)(3)(iv) (2006).

[10] Pinpoint citation by the Court.

[11] Pinpoint citation and parenthetical by the Court.

it gives an egregiously mistaken ground for this action").

In the instant case, the Appeals Council simply stated that it "found no reason under our rules to review the Administrative Law Judge's decision." (R. at 5)  The Court does not find that this is "an egregiously mistaken ground," Mills v. Apfel, 244 F.3d at 5, for declining to review the decision of the ALJ. Accordingly, to the extent that Plaintiff relies on medical evidence which was not before the ALJ, specifically the medical records from Dr. Johnson, (R. at 340-46), and Dr. Palumbo, (R. at 358-60), as support for her argument that the medical improvement following her July 2002 surgery was only temporary, Plaintiff's argument is rejected.[12]

The Court finds that the ALJ adhered to the medical improvement standard in terminating Plaintiff's DIB.  The ALJ compared the medical evidence from the time period surrounding the allege onset of disability to the more recent medical evidence of record.  (R at 17-18).  He noted that Plaintiff had sustained a painful injury to her lower back at work which made it difficult for her to walk, (R. at 17); that although she underwent pain reduction and strength modalities after the

---

[12] The Court's refusal to consider this post-hearing evidence is consistent with the principle that, when a plaintiff is represented at the hearing before the ALJ, the primary responsibility for insuring that the record is complete is Plaintiff's.  See Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored."); Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988) ("[A]n ALJ is entitled to presume that a claimant represented by counsel in the administrative hearings has made his best case."). While the December 15, 2004, report from Dr. Palumbo post-dates the administrative hearing before the ALJ by nine months, (R. at 359), most of the additional records from Dr. Johnson were created prior to the March 3, 2004, hearing, (R. at 341-44).  Plaintiff provides no explanation for her failure to present these records to the ALJ at the time of the hearing.

injury, she failed to experience significant improvement in her symptoms of pain (id.); that during a December 2001 examination Dr. Stanley recorded that Plaintiff showed evidence of pain when attempting to maneuver around the examining room and that she exhibited limited range of motion of the lumbar spine due to severe pain (id.); that Dr. Stanley found that she was tender to palpation at L5-S1 (id.); that Dr. Stanley restricted her from performing any work due to her condition (R. at 18); that in July 2002 Plaintiff underwent a posterior lumbar decompression and fusion with instrumentation down into the sacrum (id.); that on June 12, 2003, Dr. Cicerchia performed an independent medical evaluation of Plaintiff and wrote that Plaintiff reported some improvement in her symptoms since the surgery, although she had not yet returned to work (id.); that Dr. Cicerchia also recorded that she walked with a slightly antalgic gait (id.); that the range of motion of her back was only slightly limited secondary to pain, and straight leg raising was negative (id.), that her motor strength was 5/5 in all nine motor moves of the right lower extremity and intact in the left lower extremity except for mildly decreased strength over the left tibialis, (R. at 18), and that her sensation was grossly intact, (id.).  The ALJ concluded his comparison by stating that "[i]t was Dr. Cicerchia's opinion that the claimant could return to 'a light duty, sedentary job at this time." (Id. (quoting R. at 330)).

The foregoing demonstrates that the ALJ identified changes in the signs and symptoms associated with Plaintiff's impairment which were indicative of an improvement in her condition. Specifically, while Dr. Stanley indicated in December of 2001 that Plaintiff "showed evidence of pain when attempting to maneuver around the examining room," (R. at 17), in July 2003 Dr. Cicerchia observed only that Plaintiff "walked with a slightly antalgic gait ...," (R. at 18).  Although Plaintiff told Dr.

Cicerchia that "lifting, climbing, carrying, pushing, pulling, sitting, standing, walking, coughing, sneezing, dressing, reaching overhead or behind her back, driving, bending, climbing stairs, sleeping, and getting in and out of cars and in and out of chairs exacerbate her pain," (R. at 329), on physical examination the only finding relative to pain noted by Dr. Cicerchia was that the range of motion of her back was "slightly limited secondary to pain posteriorly," (id.). There is no indication that Dr. Cicerchia saw any evidence that simply moving about the examining room was as painful for Plaintiff as it had been when she was seen by Dr. Stanley in December of 2001.

The ALJ also noted that Plaintiff's lifestyle and daily activities as of June 12, 2003, indicated that she was no longer completely debilatated by her physical impairments. (R. at 20) Substantial evidence supports this statement. Plaintiff testified that she resumed driving in July of 2003, approximately one year after her surgery. (R. at 36) She ceased wearing a body brace in March of 2003, nine months after that surgery (R. at 36-37) While Plaintiff testified that she had an elastic support with metal stays, she indicated that she wore this only if she was "going to be sitting for a while or having to travel ...." (R. at 42) She described her pain level prior to the surgery in stark terms: "I kept begging them. Please take me in. I couldn't stand it." (R. at 39) Although she recounted continued pain after the surgery (R. at 41-51), it appears not to have been at the same level or intensity. The strongest evidence of a diminution in her pain is reflected in Plaintiff's response to the ALJ's question as to whether she could perform work of a sedentary nature:

> Q   All right. And then let me ask you this
>      just so I'm 100 percent clear. If you had
>      a job where you could sit or stand as you
>      needed, didn't have to lift weights more than

five, ten pounds, and could work at like a
high bench, maybe a high stool.  You could
either sit there or stand up.  You didn't
have to do a lot of stooping, squatting,
kneeling, bending.  No climbing.  Not a lot
of reaching overhead or things like that.
So it's basically a job with your -- using
light weights.  And you could do that, sit
or stand, as you felt appropriate.  You
could do that for two hours.  Then you get a
15-minute break.  Another two hours.  You get
a half-hour for lunch.  Another two hours,
get a fifteen minute break.  Another two
hours, you get a -- an opportunity to go home.
Do you think you could do that on a sustained
basis?

A     If it wasn't raining out.

Q     And so –

A     Any damp weather I can't -- I don't
      function.

(R. at 47).  The fact that the only impediment Plaintiff foresaw
to her performing the job described by the ALJ was weather
clearly indicates a lessening in the severity of her symptoms
from those which existed prior to June 12, 2003.

    Additional evidence of an improvement in her condition
exists in the record.  On August 5, 2002, Plaintiff completed an
activities of daily living form in which she stated that she was
unable to perform housework, chores, or drive.  (R. at 117)  In a
reconsideration disability report completed on September 30,
2002, Plaintiff reported that she was unable to care for her
personal needs and that her ability to perform daily functions
had been greatly compromised. (R. at 124)  However, by the end of
October 2002 her condition had improved somewhat such that she
was able to do the dishes and vacuum one room per week.  (R. at
129)  At the hearing in March of 2004, Plaintiff testified that
she was able to dress and bathe herself, (R. at 42), that she had
resumed driving in July of 2003, (R. at 36), that she crocheted

up to two hours a day, (R. at 44), and that she spent up to three hours a day reading, (R. at 37), an hour watching television, (id.), and a half hour using the computer, (id.).

Thus, substantial evidence supports the ALJ's conclusion that Plaintiff's activities had significantly increased by June of 2003, and the ALJ reasonably concluded that this reflected an improvement in her symptoms. Cf. Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 429 (1st Cir. 1991)(finding that ALJ adequately considered plaintiff's pain where, among other things, he noted that she had walked without assistance at the hearing and had driven to the district office, and she "stated on her application for benefits that she did 'all the household chores at my own pace'"). Evidence of Plaintiff's increased activity and objective medical findings provide substantial evidence in support of the ALJ's conclusion that Plaintiff experienced medical improvement.

The ALJ also addressed the only evidence in the record before him which is inconsistent with his finding that Plaintiff had experienced medical improvement. (R. at 19) Dr. Palumbo completed a questionnaire on January 8, 2004, in which he indicated that Plaintiff could not return to her former position of employment "at this time," (R. at 334), and also that she was not capable of other work, (id.). The ALJ gave this statement minimal weight because Dr. Palumbo was a non-vocational expert, the doctor did not describe precise functional restrictions or supportive findings, and the doctor's report was "inconsistent with his last report of record in September 2002, which described good healing and minimal residual abnormalities." (R. at 19); see also (R. at 309). While the ALJ mistakenly referred to Dr. Palumbo's September 11, 2002, report, (R. at 309), as his last previous record, the ALJ's point remains valid as the last previous report in the record from Dr. Palumbo, which is dated

15

November 6, 2002, (R. at 196), is even more positive in tone than his September 11, 2002, report.[13]

Conflicts in the evidence are for the Commissioner to resolve. See Freeman v. Barnhart, 274 F.3d 606, 609 (1st Cir. 2001). Here the ALJ considered the contrary evidence regarding medical improvement and provided valid reasons for discounting this evidence.

To summarize, the Court finds: 1) that in determining whether the decision is supported by substantial evidence only the evidence which was before the ALJ is considered, see Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001); 2) that the ALJ correctly used the medical improvement standard in terminating Plaintiff's benefits; 3) that substantial evidence supports the ALJ's finding that Plaintiff experienced medical improvement as of June 12, 2003; and 4) that the record before the ALJ contains substantial evidence that the improvement was not only temporary. According, Plaintiff's first claim of error is rejected.

## II. The ALJ's step five finding

The ALJ found that Plaintiff had the RFC to perform a reduced range of light work, (R. at 22, 24), and that, based on the testimony of the VE, Plaintiff was capable of making a successful adjustment to work which exists in the Rhode Island/Southeastern Massachusetts area, (id.). The VE testified that a person with Plaintiff's RFC could perform the jobs of packager, assembler, inspector, and production worker. (R. at 22, 24, 54)

---

[13] Dr. Palumbo noted on November 6, 2002, that "[Plaintiff] is doing quite well. She has been compliant with brace wear. She really has no significant back or leg pain on a regular basis." (R. at 196). He recorded that on examination she was able to stand upright and that "AP and lateral x-rays show good position of the prior instrumentation. Bone graft appears to be consolidating well in the posterolateral gutters." (Id.)

"The ALJ was entitled to credit the vocational expert's testimony as long as there was substantial evidence in the record to support the description of claimant's impairments given in the ALJ's hypothetical to the vocational expert." Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 429 (1st Cir. 1991); see also Arocho v. Sec'y of Health & Human Servs., 760 F.2d 374, 375 (1st Cir. 1982)("[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities.").  In the instant case, the ALJ propounded the hypothetical which appears below.

Q     All right.  Then I'd like you to assume that there's an individual the same age, education, and work experience as the Claimant.  And to further assume that individual has the following work-related abilities and limitations.  The ability to lift and carry -- we're going to say 20 pounds occasionally -- close, limit it to 10 pounds occasionally and less then 10 pounds frequently.  The ability to sit for at least six hours out of an eight-hour day.  And this is going to be based upon -- we're only on Exhibit 8F.  **The ability to stand and walk for at least six hours out of [an] eight-hour day,** the ability to climb ramps and stairs occasionally, inability to climb ladders, ropes, or scaffolding.  Ability to balance occasionally, bend occasionally, stoop occasionally, kneel occasionally, crouch occasionally, squat occasionally.  No crawling.  No work at unprotected heights or around dangerous moving machinery.  However -- and the individual we'll say also that the tasks performed would be such as those that would be requiring a low degree of concentration, but such that would be consistent with the ability to perform at least simple routine repetitive jobs on a sustained basis in an eight-hour workday.  That is no more th[a]n simple decision-making and there's no requirements to perform complex or detailed tasks.  And those

17

> limitations are being imposed because the Claim-
> ant has alleged limitations in concentration
> [INAUDIBLE].  So based upon those limitations,
> what jobs, if any, could that hypothetical
> individual perform?

(R. at 53)(bold added).

The only evidence in the record that Plaintiff has the ability to stand and walk for at least six hours out of an eight hour day is the November 19, 2002, residual functional capacity assessment by state agency medical consultant Youssef Georgy, M.D. ("Dr. Georgy").  (R. at 198)  However, the ALJ specifically discounted the opinions of the state agency medical consultants. (R. at 19).  He explained that:

> Those opinions were based on information contained in the
> record at that time of the state agency reconsideration
> determination in this case, and no medical records
> generated or provided after that date were considered by
> the state examiners.  However, additional medical
> evidence received in the course of developing the
> claimant's case for review at the hearing, as well as
> evidence in the form of credible testimony at the
> hearing, consistent with medical evidence in the record,
> justifies a conclusion that the claimant's impairments
> are more limiting than was concluded by the state
> examiners (Social Security Ruling 96-6p).

(R. at 19)

The above explanation is entirely reasonable, and it is supported by substantial evidence in the record.  Cf. Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 330 (1st Cir. 1990) (stating that fact that non-examining physician did not have complete medical record before him, when he opined regarding plaintiff's functional limitations, counseled against assigning significant weight to his opinion).  Yet, after finding that Plaintiff's impairments were more limiting than had been concluded by the state agency medical consultants (R. at 19), the ALJ proceeded to use Dr. Georgy's opinion in formulating the

18

inputs for the hypothetical (R. at 53).

Further undermining the inputs in the hypothetical, the ALJ stated that he gave controlling weight to Dr. Cicerchia's opinion in determining Plaintiff's RFC.[14]  (R. at 21)  Dr. Cicerchia opined that Plaintiff could "work a light duty, sedentary job ...."[15]  (R. at 330).  Nothing in Dr. Cicerchia's report suggests that he believed that Plaintiff was capable of standing or walking for six hours in an eight hour day.  (R. at 328-30)  His observation that Plaintiff "walks with a slightly antalgic gait favoring her back," (R. at 329), his finding that "[i]n comparison to prior examinations, the patient had some decreased strength of her left lower extremity," (R. at 330), and his opinion that "[o]rthopedically, the patient's prognosis is poor," (id.), weigh heavily against reading into Dr. Cicerchia's report

---

[14] The Court notes that the ALJ should not have accorded controlling weight to the opinion of Dr. Cicerchia.  Social Security Ruling ("SSR") 96-2p provides that in order to be given controlling weight a medical "opinion must come from a 'treating source' as defined in 20 CFR [§§] 404.1502 and 416.902.  Although opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances, opinions from sources other than treating sources can never be entitled to 'controlling weight.'"  SSR 96-2p, 1996 WL 374188, at *2 (S.S.A.).  The ALJ was bound to follow SSR 96-2p.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1125 (1st Cir. 1986)("Social Security Rulings are binding on all Social Security Administration personnel, including state agency adjudicators, administrative law judges, and the Appeals Council."); see also Rose v. Shalala, 34 F.3d 13, 17 n.2 (1st Cir. 1994)(citing McDonald).

[15] A sedentary job is defined in the regulations as one which:

> involves lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (2006).

that he thought Plaintiff has the capability to walk or stand for
six hours in an eight hour day.  Indeed, if Dr. Cicerchia felt
that Plaintiff possessed such capability, there would have been
no reason for him to specify that the job be "sedentary.[16]

In this case, the medical evidence does not permit the
assumption that Plaintiff's RFC includes the ability to stand or
walk for six hours in an eight hour day.  As previously noted,
the only doctor who opined that Plaintiff had such capability was
Dr. Georgy, (R. at 198), and his opinion was discounted by the
ALJ because it was rendered without the benefit of "medical
records generated or provided after [the state agency
reconsideration determination] ...," (R. at 19).  Dr. Cicerchia
opined that Plaintiff was capable only of a "light duty,
sedentary job."  (R. at 330)  Plaintiff's own treating physician
stated that she was disabled from performing any job.  (R. at
334).  Even the other state agency medical consultant, Dr. Edward
R. Hanna, who also rendered an opinion regarding Plaintiff's
functional capacity without the benefit of subsequent medical
records, did not believe that Plaintiff could stand or walk for
six hours in an eight hour day.  (R. at 151).

Because the ALJ's hypothetical question assumed that
Plaintiff had this ability, and because the medical evidence did
not permit that assumption, the ALJ could not rely upon the VE's
response as a basis for finding Plaintiff not disabled.  See Rose
v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994)("Because the ALJ's
hypothetical assumed that fatigue did not pose a significant
functional limitation for the claimant, and because the medical

---

[16] Defendant, in her memorandum, argues that the ALJ's finding
that Plaintiff is capable of light work is supported by substantial
evidence and suggests that Dr. Cicerchia opined that Plaintiff was
capable of "both light duty **and** sedentary work ...."  Defendant's
Memorandum in Support of Motion for Order Affirming the Commissioner's
Decision ("Defendant's Mem.") at 17 (bold added).  The Court rejects
this suggestion as implausible for the reasons stated above.

20

evidence did not permit that assumption, the ALJ could not rely
on the vocational expert's response as a basis for finding
claimant not disabled.")(citing Arocho v. Sec'y of Health & Human
Servs., 670 F.2d 374, 375 (1st Cir. 1982)).  While eliminating
from the hypothetical the assumption that Plaintiff has the RFC
to stand or walk for six hours in an eight hour workday may not
result in a significantly different answer from the VE, the Court
cannot find that there are a substantial number of jobs available
in the national economy in the absence of evidentiary support in
the record.  See Iafrate v. Barnhart, 261 F.Supp.2d 96, 99
(D.R.I. 2003)(finding Magistrate Judge's "holding flawed because,
in his laudable effort to correct the ALJ's no doubt inadvertent
slip of tongue, he concluded that the number of jobs available
which the Plaintiff could perform was 'substantial' even though
there was no evidence in the record upon which to base this
conclusion"); see also Goodermote v. Sec'y of Health & Human
Servs., 690 F.2d 5, 7 (1st Cir. 1982)("The Secretary ... has the
burden of showing the claimant has not satisfied the fifth test;
that is to say, the Secretary must show that there are other jobs
in the economy that claimant can nonetheless perform."); Geoffrey
v. Sec'y of Health & Human Servs., 663 F.2d 315, 317 (1st Cir.
1981)(stating that "where a claimant presents a prima facie case
of disability-i.e., that he cannot engage in his previous type of
employment-it is the Secretary's responsibility to establish that
the claimant can engage in alternate employment and that such
employment exists").

     Accordingly, I find that the ALJ's conclusion that there are
jobs that exist in significant numbers in the national economy,
(R. at 22, 24), which Plaintiff could perform after June 12,
2003, is not supported by substantial evidence.  Consequently,
this matter must be remanded to the Commissioner for a new
hearing to determine whether Plaintiff continued to be under a

disability after June 12, 2003.[17]

## Summary

The Court finds that the ALJ properly utilized the medical improvement standard in terminating Plaintiff's DIB and that substantial evidence supports the conclusion that the medical improvement, which the ALJ found Plaintiff experienced as of June

---

[17] Although Plaintiff has not included it in her claims of error, the record also reflects a troubling inconsistency in the ALJ's determination of Plaintiff's credibility.  Twice during the hearing the ALJ indicated that he believed that Plaintiff was credible.  (R. at 39, 48).  Yet, in his decision, the ALJ found that Plaintiff's subjective complaints were exaggerated and not credible to the extent that they purported to limit her ability to perform substantial gainful employment after June 12, 2003.  (R. at 20, 23).  This reversal is especially problematic because the ALJ appears to have interrupted the examination of Plaintiff by her attorney, seemingly for the purpose of indicating that the questioning, which concerned the degree and frequency of Plaintiff's pain, was unnecessary:

> Q    You talked about good and bad days.  How many good and bad days do you think you have on average?
>
> A    That depends on the weather or [INAUDIBLE] --
>
> ALJ:  [INAUDIBLE] that she leave her house five days a week.  That's a pretty good indication.
>
> ATTY: Um-hum.
>
> ALJ:  And she's indicated that she has to lie down five to six hours a day, so I think I get the picture -
>
> ATTY: Okay.
>
> ALJ:  -- basically and I find that she's credible.

(R. at 48)
     While an ALJ is certainly free to depart from his initial impression of a plaintiff's hearing testimony, particularly after further consideration of the entire record, it is problematic to do so after announcing that the plaintiff is credible.  In such a case, a plaintiff may claim with some justification that s/he was mislead into believing that it was unnecessary to present further testimony regarding his or her pain or, as here, to make a closing statement, (R. at 54).  An ALJ should refrain from making statements about a plaintiff's credibility during the hearing unless the ALJ intends to be bound by those statements in his decision.

12, 2003, was not just temporary.  In determining whether the ALJ's decision is supported by substantial evidence, the Court considers only the evidence which was before the ALJ.  See Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).  The Court does not consider the medical evidence which was submitted to the Appeals Council because that body, in declining to review the ALJ, did not "give[] an egregiously mistaken ground for this action."  Id. Accordingly, Plaintiff's first claim of error is rejected.

Plaintiff's second claim of error, however, is sustained. Substantial evidence does not support the ALJ's finding that a significant number of jobs exist which Plaintiff has the RFC to perform.  This is because the hypothetical question which the ALJ posed to the VE assumed that Plaintiff could stand or walk for six hours in an eight hour work day, and the medical record does not support this assumption.

### Conclusion

The Court finds that the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence in the record.  Accordingly, I recommend that Plaintiff's Motion to Reverse be granted to the extent that this matter should be remanded to the Commissioner for a new hearing to determine whether Plaintiff continued to be under a disability after June 12, 2003.  I further recommend that Defendant's Motion to Affirm be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st

Cir. 1980).


DAVID L. MARTIN
United States Magistrate Judge
December 29, 2006